UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

KATHERINE D. GRANT,⁣ )
⁣ )
     Plaintiff,⁣ )
⁣ )
v.⁣ )    No. 3:14-CV-399
⁣ )    (PHILLIPS/GUYTON)
CAROLYN W. COLVIN,⁣ )
Acting Commissioner of Social Security,⁣ )
⁣ )
     Defendant.⁣ )

## MEMORANDUM OPINION AND ORDER

Now before the Court are Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 14 & 15] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 16 & 17]. Plaintiff Katherine D. Grant seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

In May 2011, Plaintiff protectively filed an application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") with an amended alleged onset date of March 31, 2011. [Tr. 151-61, 316]. The Social Security Administration denied Plaintiff's application initially and upon reconsideration. [Tr. 89-92, 94-97]. Plaintiff timely filed a request for a hearing, and she appeared before Administrative Law Judge, Andrea L. Wirth, on December 27, 2012 in Knoxville, Tennessee. [Tr. 99-101, 31]. The ALJ issued an unfavorable decision on April 22, 2013. [Tr. 8-30]. Plaintiff filed her appeal of the decision, which the Appeals Council declined to review on July 23, 2014. [Tr. 6-7; 1-5].

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court

on August 25, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2. The claimant has not engaged in substantial gainful activity since March 31, 2011, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following "severe" impairments: *asthma with borderline chronic obstructive pulmonary disease (COPD); anxiety; and major depressive disorder (*20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform *medium* work as defined in 20 CFR 404.1567(c) and 416.967(c). She can understand simple instructions and procedures. She can carry out simple, repetitive, routine tasks for 2-hour periods during a normal workday without excessive interruption from psychological symptoms. She can make simple work decisions. She can accept supervision and interact with co-workers. Contact with the public should be limited in nature. She can adapt to simple changes and can avoid hazards.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 11, 1954 and was 55 years old, which is defined as an individual of advanced age, on the amended alleged disability onset date (20 CFR 404.1563 and

2

416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.963).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 31, 2011, the amended alleged onset date, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 13-23].

## II.    DISABILITY ELIGIBILITY

This case involves an application for DIB and SSI benefits. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed.  Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was

5

reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner.  See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).  The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47.  Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard.  See Id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits.  Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    EVIDENCE

### A.  Medical Evidence

In May 2011, Plaintiff filed for DIB and SSI benefits with an amended alleged onset date of March 31, 2011.  [Tr. 151-61, 316].  Plaintiff's date of birth is October 11, 1954 and she reported that she completed the tenth grade.  [Tr. 182, 188].  Plaintiff has past relevant work experience as a mental health care provider, housing company "team leader[,]"assembler, driver, retail store assistant manager, "product return inspector[,]" and cashier.  [Tr. 188, 263].  She reported that she became disabled on March 31, 2011, the day she stopped working due to her medical conditions consisting of lupus, depression, and degenerating discs.  [Tr. 316, 187].

6

### 1. Treating Sources

Dr. Debra M. Nathan was Plaintiff's primary care physician from December 30, 1996 until January 12, 2009. [Tr. 846-939]. A MRI of Plaintiff's lumbar spine from 2003 revealed "degenerative disc changes, worst at the L5-S1 level" and "[m]inimal neural foramen narrowing is seen on the left side at L4-5 and L2-3 levels without nerve root impingement." [Tr. 894]. On May 8, 2006, Plaintiff was treated by Dr. Nathan for complaints of fatigue and "no energy over the last couple of months." [Tr. 871]. Dr. Nathan noted Plaintiff's history of lupus, which "has been in 'remission' so unclear how much this relates to problem." [Tr. 872]. Dr. Nathan found that Plaintiff's fatigue was "most likely multifactorial." [Id.]. On July 1, 2008, Plaintiff reported chest, shoulder, and back pain and continued symptoms of depression, anxiety, and fatigue. [Tr. 853]. Dr. Nathan noted that Plaintiff was "affected by [the] seasons with winter being very difficult" and that Plaintiff "does feel that she is fairly healthy overall." [Id.]. Dr. Nathan assessed anxiety, atypical chest pain, fatigue, and depression. [Tr. 855]. In November 2008, Plaintiff complained of aches and pain in her joints. [Tr. 849]. Plaintiff reported that she had seen a rheumatologist who confirmed that she was negative for lupus. [Id.]. Dr. Nathan conducted a follow up examination for Plaintiff's arthritic pain on January 12, 2009, and noted that Plaintiff was alert and in "no acute distress." [Tr. 847-48]. Plaintiff reported that she was feeling better overall "on the diclofenac as well as going to the gym[.]" [Tr. 847]. Dr. Nathan assessed that Plaintiff had back pain "secondary to [degenerative disc disease ("DDD")]; stable with diclofenac, regular exercise." [Tr. 848].

Plaintiff sought treatment at Crisis & Counseling Center from 2007 through 2009 for depression and anxiety. [Tr. 941-1116]. Julie Hopkins, a licensed clinical addiction counselor ("LCAC"), stated:

7

> Client attended weekly sessions from [January 27, 2009] thru [March 24, 2009] with the exception of several weeks. She returned to treatment in January after deciding she needed support in achieving her goals of living independently. Treatment focused on encouragement and motivation to take necessary steps and addressing past experiences of above that affected self-efficacy and self-esteem. At [the] time of discharge, client had obtained a job and apartment near her daughter and grandchildren in another state. She is very excited by her new life.

[Tr. 941].

Plaintiff sought treatment at Blount Memorial Hospital in December 2009 and November 2011. [Tr. 379-400, 726-783]. On December 23, 2009, Plaintiff was treated for a sore throat, cough, and chest congestion, non-emergent. [Tr. 386-87]. She reported that she was not currently taking any medications and x-rays of Plaintiff's chest revealed "no active disease in the chest." [Tr. 389]. Plaintiff was noted as "[w]ell-appearing; well-nourished, in no apparent distress." [Tr. 388]. She was diagnosed with bronchitis and discharged. [Tr. 393, 389]. In November 2011, Plaintiff was again treated for "dyspnea on exertion, admitted for chest pain." [Tr. 730]. She was diagnosed with chest pain "with myocardial infarction ruled out and normal exercise tolerance test with Myoview[,]" a history of rheumatic fever and lupus "diagnosed at the Mayo Clinic[,]" depression, bronchitis that was improved with bronchodilators and Azithromycin, and an acceptable lipid profile. [Id.]. Plaintiff had a "normal stress test and was advised she may slowly start to follow up with her activity to improve her exercise tolerance." [Id.]. Plaintiff received physical therapy from a Blount Memorial Hospital therapist on July 24, 2012. [Tr. 812]. After treatment, Plaintiff responded that she had no pain and that she felt "much better." [Id.].

Plaintiff sought treatment with East Tennessee Medical Group for various ailments from 1996 through May 2010. [Tr. 401-575]. On May 12, 2010, Plaintiff was treated for right

shoulder and arm pain that had persisted for one month. [Tr. 405]. Plaintiff was found to be "[w]ell developed, well nourished. In no acute distress." [Id.]. Dr. Andrew Dirmeyer assessed that Plaintiff had full range of motion in her neck, right shoulder, and right elbow and "[n]o tenderness along the shoulder or elbow." [Id.]. Dr. Dirmeyer prescribed Aleve two times a day for seven days. [Tr. 406].

Plaintiff was a patient at the Interfaith Health Clinic from 2002 through 2011. [Tr. 622-72]. Interfaith treated Plaintiff for various issues, including fatigue, back and shoulder pain, migraines, and depression. [Tr. 625-37]. On April 1, 2011, Plaintiff complained of chronic fatigue that was worsened by the weather and her allergies, "but much better on Celexa and Flonase." [Tr. 628].

Plaintiff sought treatment for depression at Cherokee Health Systems ("CHS") in June 2011 "at the recommendation of her [Social Security Disability Insurance ("SSDI")] attorney." [Tr. 699]; [see also Tr. 698-702, 721-25]. Dr. Gregory Perry noted that Plaintiff attempted suicide in 2001 and reported suicide ideation as recently as 2009. [Tr. 701]. Plaintiff was assessed with major depressive disorder, a history of lupus and chronic bronchitis, and a Global Assessment of Functioning ("GAF") score of 50-55. [Id.]. Plaintiff returned to CHS with complaints of chest pain in November 2011. Upon examination, Family Nurse Practitioner ("FNP") Johnson assessed that Plaintiff's lungs were clear and respiration was normal. [Tr. 724]. FNP Johnson found that Plaintiff's symptoms were "aggravated by anxiety and exertion[.]" [Tr. 723]. FNP Johnson examined Plaintiff again on January 25, 2013 for "lupus questions" and diagnosed systemic lupus erythematosus and a symptomatic cough. [Tr. 1124-25]. FNP Johnson encouraged Plaintiff to "continue with meds for sleep and depression; may use anti-inflammatory for joint pain; will refer to rheumatologist when [patient] acquires health

9

insurance . . . increase fluids, humidifier in room at night[.]" [Id.].

### 2. Non-Treating Sources

Dr. Jeffrey Summers conducted a physical examination on September 10, 2010. [Tr. 577]. Plaintiff reported chronic back pain, muscle soreness, and fatigue. [Tr. 577]. Dr. Summers noted Plaintiff's single leg raise test was negative in both seated and supine positions, with decreased range of motion in her lumbar spine. [Tr. 578-89]. Her range of motion was full in all other joint areas, her grip strength was normal, and she ambulated normally with upright posture. [Tr. 579]. Dr. Summers found that Plaintiff would "have difficulty bending, stooping, kneeling, squatting, crouching, crawling, climbing, and lifting greater than twenty lbs." [Id.]. Dr. Summers concluded that Plaintiff could "tolerate all other work activities" and had "full and unrestricted use of both upper extremities, the ability to work from a seated position, perform clerical work, and operate hand and foot controls, etc. for 8 hrs. total in a single workday." [Id.].

Dr. Candice Blake conducted a psychological examination on September 17, 2010. [Tr. 586]. Plaintiff reported difficulty with memory that interfered with her job performance and a history of degenerative disc disease, lupus, depression, and sleep issues. [Id.]. Plaintiff's reported daily activities included cooking, grocery shopping, doing laundry, performing household chores, working on the computer, writing a novel, doing puzzles and crafts, going on daily walks, and visiting with her daughter in Cleveland, Tennessee. [Tr. 588]. Plaintiff reported a suicide attempt in 2001 in which she combined pills and alcohol. [Tr. 587]. Dr. Blake assessed major depression and a history of lupus and DDD. [Tr. 588]. Dr. Blake determined that Plaintiff had marked limitations in understanding, memory, concentration, and persistence, moderate limitations in social interaction, and extreme limitations in her overall adaption due to her "cognitive disorder and her level of depression." [Id.].

10

Dr. Evan M. Stanley submitted a non-examining psychiatric RFC on September 24, 2010. [Tr. 591-608]. Dr. Stanley diagnosed Plaintiff with cognitive disorders and depression. [Tr. 592-94]. Dr. Stanley assessed mild limitations in Plaintiff's daily activities, moderate limitations in social functioning, marked limitations in maintaining concentration, persistence, and pace, and no episodes of decompensation. [Tr. 601].

Dr. J. Quinlan submitted a case analysis on November 3, 2010. [Tr. 610]. Dr. Quinlan examined Plaintiff's Interfaith medical records and Dr. Summers' assessment, stating that he found Plaintiff credible, "[s]he is just repeating what she had been told." [Id.]. On November 8, 2010, Dr. A. Baitch submitted a non-examining orthopedic evaluation. [Tr. 612]. Dr. Baitch diagnosed Plaintiff with degenerative lumbar disc disease but found no medically determinable impairment ("MDI") in her upper extremities. [Id.]. She found that Plaintiff was only partially credible, noting that "there are no signs of radiation and minimal pain meds were prescribed. No MRI, X-rays or other tests nor specific treatments for back pain were required in recent years. No assistive devices are required." [Id.].

Dr. Eva Misra conducted a pulmonary function test on July 15, 2011 indicating "borderline obstruction . . . Postmed testing improved to moral spirometry[.]" [Tr. 680]. Dr. Misra found that Plaintiff's "number one complaint is psychiatric." [Id.]. Dr. Misra noted that Plaintiff was "well-developed, well-nourished, and alert. Intellectual functioning is normal . . . She is cooperative. I am not sure if she is reliable on her history." [Tr. 681]. Dr. Misra assessed a full range of motion universally, "full muscle condition and strength including lumbar spine" with normal spirometry and normal lumbar spine. [Tr. 681-82]. Dr. Misra found no evidence of lupus, rash, or synovitis. [Tr. 682].

On August 12, 2011, Dr. Charles Settle, a non-treating and non-examining physician,

provided a physical RFC assessment. [Tr. 684-92]. Dr. Settle found that the Plaintiff could occasionally carry 50 pounds, frequently carry 25 pounds, walk, sit, or stand for about 6 hours in an 8-hour workday, and push or pull for an unlimited length of time. [Tr. 685]. Dr. Settle also found that the Plaintiff should avoid concentrated exposure to fumes, dust, or gases. [Tr. 688].

On August 23, 2011, Dr. William J. Kenney conducted a psychiatric examination of Plaintiff. [Tr. 694]. Dr. Kenney noted mild limitations in regards to Plaintiff's ability to understand and remember, moderate limitations in concentration and persistence, moderate to marked limitations in her ability to interact with others, and moderate to marked limitations in regards to adaption. [Tr. 697]. Dr. Kenney diagnosed Plaintiff with major depression and anxiety disorder. [Id.].

Dr. S. Jessee submitted a psychiatric RFC on September 19, 2011. [Tr. 703]. Dr. Jessee diagnosed Plaintiff with major depressive disorder and anxiety disorder. [Tr. 706-08]. Dr. Jessee assessed moderate restrictions in activities of daily living, social functioning, concentration, persistence, and pace, and no episodes of decompensation. [Tr. 713].

### B. Other Evidence

The ALJ conducted an administrative hearing on December 27, 2013 in which Plaintiff and vocational expert ("VE"), Jane Hall, testified. [Tr. 31-67]. The ALJ issued an unfavorable decision on April 22, 2013. [Tr. 8-30]. The ALJ found that Plaintiff's severe impairments included asthma with borderline chronic obstructive pulmonary disease, anxiety, and depression and assessed that Plaintiff's back pain and lupus were non-severe. [Tr. 14]. The ALJ determined that Plaintiff had the RFC to perform medium work with additional exertional and nonexertional limitations. [Tr. 17]. The ALJ gave great weight to Drs. Jessee and Misra, little weight to Drs. Summers, Blake, and Kenney, and noted that FNP Johnson was not an acceptable

medical source. [Tr. 18-21]. Based on the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy such as hand packager/packer, production worker, and assembler. [Tr. 23].

## V.    POSITIONS OF THE PARTIES

Primarily, the Plaintiff argues that the ALJ erred in finding her chronic back pain was non-severe. Further, Plaintiff contends that the ALJ's RFC was flawed because he failed to consider her back pain and improperly weighed the medical evidence in determining her functional capabilities. Plaintiff concludes that the ALJ's opinion suggested bias against her.

The Commissioner contends that the ALJ's determination that Plaintiff's back pain was a non-severe impairment is supported by substantial evidence. The Commissioner found that the ALJ properly assessed Plaintiff's RFC and solicited the testimony of a vocational expert to determine that Plaintiff could perform other work in the national economy.

## VI.    ANALYSIS

The Court will address each of the issues presented in turn.

### A. Severe Impairments

The Plaintiff contends that the ALJ committed harmful error by classifying her back pain as non-severe. At step two of the sequential evaluation process, "the ALJ must find that the claimant has a severe impairment or impairments" to be found disabled. Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 88 (6th Cir. 1985); see 20 C.F.R. § 404.1520(a)(4)(ii). To be severe, an impairment or combination of impairments must "significantly limit[] your physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). Step two has been described as "de minimis hurdle in the disability determination process." Higgs v. Brown, 880 F.2d 860, 862 (6th Cir. 1988). An impairment should be classified as non-severe "only if

13

the impairment is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" Farris, 773 F.2d at 90 (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984)).

"[O]nce any one impairment is found to be severe, the ALJ must consider both severe and non-severe impairments in the subsequent steps." McGlothin v. Comm'r of Soc. Sec., 299 F. App'x 516, 522 (6th Cir. Oct. 31, 2008) (citing Anthony v. Astrue, 266 F. App'x 451, 457 (6th Cir. Feb. 22, 2008)); see also 20 C.F.R. § 416.945(a)(2) (explaining that "[i]f you have more than one impairment[, w]e will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 416.920(c), 416.921, and 416.923, when we assess your residual functional capacity.").

Therefore, it is "legally irrelevant" that an impairment was determined as non-severe if the ALJ finds other severe impairments. See McGlothin v. Comm'r of Soc. Sec., 299 F. App'x 516, 522 (6th Cir. 2008) (reasoning that "because the ALJ found that [Plaintiff] has some severe impairments, he proceeded to complete steps three through five of the analysis. It then became "legally irrelevant" that her other impairments were determined to be not severe.") (quoting Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988)). The Court in Hamilton v. Sec'y of Health & Human Servs., clarified that the rule in Farris is inapplicable where the ALJ continues the five-step disability analysis. 991 F.2d 795 (6th Cir. 1993) (holding that Farris is inapplicable "because the ALJ did not stop his consideration of claimant's [impairment] at Step 2 of the sequential evaluation process. Rather, the ALJ went through Step 5 of the process[.]").

14

Here, Plaintiff argues that the ALJ erred in finding her back pain was a non-severe impairment. The Court disagrees. The ALJ found that "the claimant's alleged low back pain was 'non-severe' insofar as it is no more than a slight abnormality, having no more than a minimal effect on the claimant's ability to perform work-related activities." [Tr. 14]. Substantial evidence supports the ALJ's finding. [See Tr. 612) (Dr. Baitch finding that although Plaintiff was diagnosed with degenerative lumbar disc disease, she was only partially credible and noting that "there are no signs of radiation and minimal pain meds were prescribed. No MRI, X-rays or other tests nor specific treatments for back pain were required in recent years. No assistive devices are required."); [Tr. 680-82] (Dr. Misra concluding that Plaintiff's "number one complaint is psychiatric" and assessing full range of motion universally, "full muscle condition and strength including lumbar spine"); [Tr. 685] (Dr. Settle finding that Plaintiff could occasionally carry 50 pounds, frequently carry 25 pounds, walk, sit, or stand for about 6-hours in an 8-hour workday, and push or pull for an unlimited length of time); [Tr. 812] (Plaintiff reporting no pain and feeling "much better" after physical therapy with Blount Memorial Hospital).

However, even if there was not substantial evidence to support the ALJ's assessment that Plaintiff's back pain was non-severe, any error in this regard was harmless and legally irrelevant. See McGlothin, 299 F. App'x at 522. The ALJ found that Plaintiff's asthma with borderline chronic obstructive pulmonary disease, anxiety, and depression constituted severe impairments. [Tr. 14]. Because the ALJ found the Plaintiff had severe impairments at step two, she proceeded to the next step of the disability analysis. [See Tr. 14-24]. Therefore, the Plaintiff succeeded at step two.

15

The Plaintiff specifically argues that the ALJ's alleged error at step two was harmful because she did not adequately consider the medical evidence (specifically the opinions of Drs. Summers, Baitch, and Misra, CHS medical records, and Plaintiff's diagnostic test results). The ALJ's consideration of the medical evidence will be discussed in detail below, but the Court notes here that any allegation of error in this regard is without merit. The Plaintiff contends that the ALJ could have found her back pain severe based on an alternative analysis of the evidence. However, none of these arguments hold water in regards to Plaintiff's severe impairments. First, it matters not whether the Plaintiff or even this Court would weigh the evidence differently or could arrive at an alternative conclusion regarding Plaintiff's back pain. See Crisp, 790 F.2d at 453 n.4. The only question is whether substantial evidence supports the ALJ's finding that Plaintiff's back pain was non-severe. The Court has already found in the affirmative in that regard. Further, as explained above, any error in ALJ's assessment was harmless because the ALJ found severe impairments and proceeded to the rest of the disability analysis.

Plaintiff further argues that the ALJ failed to fully consider her back pain and fatigue in determining her RFC. The Court disagrees. In determining Plaintiff's RFC, the ALJ stated that "[i]n making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." [Tr. 17]. The Court finds that the ALJ considered Plaintiff's non-severe impairments in determining her functional abilities. [See Tr. 18] (noting Plaintiff's full range of motion, normal gait, station, and mobility, normal results in straight leg raising, Babinski, Tinel, Romberg tests, and lack of any assistive orthotic device); [Id.] (granting Dr. Summers's opinion little weight due to Plaintiff's ability to ambulate in a normal manner, stand and walk normally,

16

perform a full squat, and perform the straight leg raise normally); [Tr. 20] (finding Dr. Blake's assessment of cognitive disorder and limitations in Plaintiff's ability to focus and remember entitled to little weight because Plaintiff "is able to use a computer, write a 'novel,' do work puzzles and make crafts"); [Tr. 21] (considering Plaintiff's improved sleep and depression after psychotherapy and medication); [Tr. 20-21] (weighing Plaintiff's subjective complaints regarding both her physical and mental impairments in assessing Plaintiff's credibility). The Court finds that substantial evidence supports the ALJ's determination at step two. However, even if the ALJ had erred in finding Plaintiff's back pain was non-severe, any error in that regard was harmless and legally irrelevant.

## B. RFC Analysis and Weighing the Medical Evidence

Next, Plaintiff argues that the ALJ improperly weighed the medical evidence in determining her RFC. The Court disagrees. An ALJ is responsible for determining a plaintiff's RFC after reviewing all the relevant evidence of record. Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013). An ALJ may consider both medical and non-medical evidence in reaching an RFC determination. Id. A plaintiff's RFC is the most a plaintiff can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "'[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.'" Griffeth v. Comm'r of Soc. Sec., 217 F. App'x 425, 429 (6th Cir. Feb. 09, 2007) (quoting Yang v. Comm'r of Soc. Sec., No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004)).

A court will not disturb an ALJ's RFC determination so long as the finding is supported by substantial evidence. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 477 (6th Cir. 2003). However, in determining a claimant's RFC, the ALJ must "make findings of fact" as to her functional and physical limitations. Simpson v. Colvin, 3:11-0481, 2013 WL 4456383, at *17 (M.D. Tenn. Aug. 16, 2013) adopted by, 3:11-CV-00481, 2013 WL 4780082 (M.D. Tenn. Sept. 4, 2013). Further, the ALJ "must 'articulate with specificity reasons for the findings and conclusions that he or she makes' to facilitate meaningful judicial review." Wright v. Astrue, 1:07-CV-226, 2009 WL 890051 (E.D. Tenn. Mar. 26, 2009) (quoting Bailey v. Comm'r of Soc. Sec., 1999 WL 96920, *4, (6th Cir. Feb. 2, 1999)).

Under the Social Security Act and its implementing regulations, an ALJ will consider all the medical opinions in conjunction with any other relevant evidence received in order to determine if a claimant is disabled. 20 C.F.R. § 404.1527(b). If the opinion of a treating physician is supported by the record, it is entitled to controlling weight. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). Where an opinion does not garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).

In considering non-treating physician opinions, an ALJ is "not bound by any findings

18

made by State agency medical or psychological consultants, or other program physicians or psychologists," but the ALJ must "consider findings of State agency medical and psychological consultants or other program physician, psychologists, and other medical specialists as opinion evidence[.]" 20 C.F.R. § 404.1527(e)(2)(i). The ALJ must evaluate the consultative physician's opinion using the relevant factors in 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6), the same factors used to analyze the opinion of a treating physician. See 20 C.F.R. § 404.1527(e)(2)(iii); Jericol Mining, Inc. v. Napier, 301 F.3d 703, 710 (6th Cir. 2002) ("We believe that the same factors that justify placing greater weight on the opinions of a treating physician are appropriate considerations in determining the weight to be given an examining physician's views."); Sommer v. Astrue, No. 3:10-CV-99, 2010 WL 5883653, at *6 (E.D. Tenn. Dec. 17, 2010) (internal citations omitted) ("The Regulations and Rulings require an ALJ, in the absence of a treating source who enjoys controlling weight, to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability and consistency.") (citing 20 C.F.R. § 404.1527(d) & (f)).

The ALJ must consider all medical opinions in conjunction with any other relevant evidence received in order to determine if a claimant is disabled. 20 C.F.R. § 404.1527(b). However, an ALJ need not specifically address each medical opinion or piece of evidence in order to adequately consider the record in its entirety. See Loral Def. Sys.-Akron v. N.L.R.B., 200 F.3d 436, 453 (6th Cir. 1999) ("the fact that the ALJ's opinion failed to discuss all of the testimony and evidence presented to him does not mean that the ALJ 'failed to consider' the evidence.") (quoting NLRB v. Beverly Enterprises-Massachusetts, 174 F.3d 13 (1st Cir. 1999)).

Plaintiff argues that the ALJ erred in her consideration of Drs. Summers, Misra, and Baitch, failed to address her CHS medical records, and neglected to consider her back pain and

fatigue in assessing her RFC. The Court has already addressed Plaintiff's allegations regarding her back pain and fatigue and need not repeat its analysis here. The Court will address the ALJ's consideration of the medical opinions in full.

Plaintiff argues that Dr. Summers's assessment should have been more fully considered as it supports Plaintiff's allegations of severe back pain. [Doc. 15 at 4-5]. Plaintiff contends that the ALJ's decision to grant Dr. Misra great weight was in error because she did not have the benefit of the full record. [Id. at 6]. Finally, Plaintiff submits that the ALJ erred in failing to adequately address Dr. Baitch's assessment and Plaintiff's records from CHS. [Id. at 5-8]. The Court finds that these arguments are without merit and that the ALJ adhered to agency procedure in weighing the medical evidence.

The record is absent a treating physician opinion, and the ALJ was obligated to weigh the non-examining and non-treating physician opinions in determining Plaintiff's RFC. 20 C.F.R. § 404.1527(b). The ALJ did so and explained the weight assigned to the physicians with specificity and clarity. In so doing, the ALJ applied many of the factors set forth in 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6). The ALJ granted Dr. Summers's assessment little weight, finding it "too restrictive, given his largely benign clinical findings." [Tr. 18]. In making this determination, the ALJ considered Plaintiff's treatment relationship, noting that Dr. Summers was a "physical consultative examiner[.]" [Id.]. The ALJ further considered the supportability and consistency of Dr. Summers's opinion by weighing Plaintiff's subjective complaints and her normal physical examination results. [See id.].

The ALJ also applied many of the factors in 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6) in weighing Dr. Misra's opinion. The ALJ granted her great weight because her conclusion "that the claimant had '*no work related physical limitations*' . . . is consistent with her

20

altogether benign clinical findings." [Tr. 18] (emphasis in the original). In making this determination, the ALJ considered the Plaintiff's treatment relationship, noting that Dr. Misra was a "physical consultative examiner" and the consistency of Dr. Misra's opinion with Plaintiff's spirometry metrics and lung tests. [Id.]. She also found that Dr. Misra's opinion was supported by Plaintiff's musculoskeletal and neurological examination results. [Id.].

The Plaintiff takes issue with the fact that Dr. Misra did not review Plaintiff's medical records. [See Doc. 15 at 6]. Plaintiff contends that "20 CFR § 404.1517 requires the government to give a consultative examiner background information about claimant's condition." [Id.]. However, 20 C.F.R. § 404.1517 does not place an imperative on the agency to provide a consultative examiner with a full medical record, but only explains that "[w]e will also give the examiner any necessary background information about your condition." Dr. Misra stated that she was not provided with Plaintiff's electronic medical records. [Tr. 681]. However, Dr. Misra conducted a physical examination and provided an opinion based on the results of that examination. Plaintiff provided a full history upon examination, and Dr. Misra conducted pulmonary tests along with a full physical examination. [See Tr. 680-82]. Further, the ALJ assessed Dr. Misra's opinion based on Dr. Misra's examination results, not Dr. Misra's knowledge of Plaintiff's medical records. [See Tr. 18]. If the Court were to adopt the Plaintiff's argument, any consultative examiner should be summarily dismissed if their opinion was submitted without full review of a plaintiff's medical record or predated any treatment records. The Court is unaware of such a rule and finds no error in the weight assigned Dr. Misra.

The Court finds that the ALJ's analysis of both Dr. Summers and Dr. Misra is supported by substantial evidence and adheres to agency procedure. The ALJ considered many of the factors set forth in 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6) and set forth her analysis

21

with specificity so that her reasoning would be clear to a subsequent reviewer. Agency regulations require no more and neither shall this Court.

The Court also finds that the Plaintiff's arguments regarding Dr. Baitch and Plaintiff's CHS records to be without merit. The Plaintiff is correct that the ALJ declined to specifically address her consideration of Dr. Baitch's one-page assessment. However, as explained above, an ALJ need not specifically address each piece of evidence in order to consider the record as a whole. See Loral Def. Sys.-Akron, 200 F.3d at 453 (quoting NLRB, 174 F.3d 13). The ALJ's failure to mention Dr. Baitch's opinion does not mean that the ALJ failed to consider the record in its entirety. Further, the Court finds that even if the ALJ erred in this regard, any error was harmless. Dr. Baitch determined that Plaintiff did not have a MDI in her upper extremities and found her only partially credible, noting that "there are no signs of radiation and minimal pain meds were prescribed. No MRI, X-rays or other tests nor specific treatments for back pain were required in recent years. No assistive devices are required." [Tr. 612]. Even if the ALJ had fully explained her consideration of Dr. Baitch's opinion, such an analysis would not serve Plaintiff's cause. Dr. Baitch's opinion supports the ALJ's determination that Plaintiff is not disabled, and any argument that the ALJ erred in her consideration of Dr. Baitch's assessment is of no moment.

The Court also finds no error in the ALJ's consideration of Plaintiff's CHS records. Plaintiff makes brief reference to a CHS treatment report from August 28, 2012, claiming the ALJ erred in not considering Dr. Mays's notation that Plaintiff reported low back and hip pain and trouble standing or sitting for extended periods of time. [Doc. 15 at 7]; [see also Tr. 833]. This argument is meritless as the Court has already explained that an ALJ need not reference each piece of evidence in order to consider the record fully. See Loral Def. Sys.-Akron, 200

22

F.3d at 453 (quoting <u>NLRB</u>, 174 F.3d 13). This concept surely applies to a single examination report noting only Plaintiff's subjective complaints.

The Court finds that the ALJ did not err in weighing the medical evidence. Her RFC assessment is supported by substantial evidence and adheres to agency procedure. Any argument to the contrary is without merit.

### C. Whether Plaintiff Can Perform Jobs Available in Significant Numbers in the National Economy

At step five, the ALJ found that given Plaintiff's RFC, she "would be unable to return to any of her past relevant work." [Tr. 22]. However, the ALJ found that "considering the claimants age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. [<u>Id.</u>]. The ALJ relied on the VE in finding that Plaintiff could perform the occupation of Hand Packager (DOT 922.687-014), Production Worker (DOT 641.685-022), and Assembler (DOT 806.684-010). [<u>See</u> Tr. 23]. Plaintiff concludes that she cannot do medium work and therefore she should be found disabled. [Doc. 15 at 11]. The Commissioner argues that substantial evidence supports the ALJ's finding that there were jobs in the national economy which Plaintiff could perform during the relevant timeframe. [Doc. 17 at 9-10]. The court concurs.

The undersigned finds that the Plaintiff has failed to raise a colorable argument regarding the ALJ's decision at step five. The Plaintiff makes only brief reference to the ALJ's step five analysis, stating merely that she cannot perform medium work and thereby should be found disabled. [Doc. 15 at 2-3, 11]. Such brief and conclusory statements are insufficient to substantiate a colorable argument. <u>See</u> <u>McPherson v. Kelsey</u>, 125 F.3d 989, 995-96 (6th Cir. 1997) ("'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed

23

argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" (quoting Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n, 59 F.3d 284, 293–94 (1st Cir. 1995)).

Further, the Court finds that Plaintiff's statements are actually an argument regarding the ALJ's assessed RFC and not her conclusion at step five. Plaintiff claims that she unable to meet the requirements of a job that requires the capacity to perform medium work. [See Doc. 15 at 2-3, 11]. The Court fully discussed the ALJ's RFC assessment, affirming the ALJ's determination, and need not repeat such analysis here. Further, the Court finds that the ALJ properly relied on the VE's testimony that there are jobs which exist in the national economy which the Plaintiff can perform. [See Tr. 23, 62]; see also 20 C.F.R. § 404.1560(c)(2). Accordingly, the Court finds that any argument regarding the ALJ's decision at step five is without merit. The ALJ's RFC and determination that there are jobs in the national economy which Plaintiff can perform is supported by substantial evidence and hereby affirmed.

### D. ALJ Bias

Plaintiff briefly alleges that the ALJ demonstrated bias against her. [Doc. 15 at 12]. The Court disagrees and notes again that a perfunctory statement is insufficient to set forth a colorable argument and constitutes a waiver of the issue. See McPherson, 125 F.3d at 995-96 (quoting Citizens Awareness Network, Inc., 59 F.3d at 293–94). Not only has the Plaintiff failed to raise a colorable argument, she did not cite to any incident in the record demonstrating bias. The Court finds this argument to be without merit.

### VII. CONCLUSION

Based upon the foregoing, it is hereby **ORDERED** that Plaintiff's Motion for Summary Judgment **[Doc. 14]** be **DENIED**, and the Commissioner's Motion for Summary Judgment **[Doc. 16]** be **GRANTED.**

**IT IS SO ORDERED.**

Enter:

_____ s/ Thomas W. Phillips_____
**UNITED STATES DISTRICT JUDGE**